O’Connor, C.J.
*477 Background
{¶ 1} This cause is here on the certification of state-law questions from the United States Court of Appeals for the Sixth Circuit. Thus the facts of this case are taken from the order of certification.
{¶ 2} Younglove Construction, L.L.C., entered into a contract with PSD Development, L.L.C., for the construction of a feed-manufacturing plant in Sandusky, Ohio. When PSD withheld payment, Younglove brought this diversity suit against PSD and three other defendants, seeking damages for breach of contract and related causes of action. In its answer, PSD alleged that it had sustained damages as a result of defects in a steel grain bin. The bin had been constructed by respondent, Custom Agri Systems, Inc., as a subcontractor, and Younglove filed a third-party complaint against Custom for contribution and indemnity. Custom filed similar third-party complaints against the subcontractors it had used to construct the bin and turned to its insurer, petitioner Westfield Insurance Company, to defend and indemnify it in the litigation. Westfield intervened in order to pursue a judgment declaring that it had no such duty under the terms of its commercial general liability (“CGL”) policy with Custom.
{¶ 3} Custom was being sued under two general theories: defective construction and consequential damages resulting from the defective construction. West-field argued that none of the claims against Custom sought compensation for “property damage” caused by an “occurrence” and therefore that none of the claims were covered under the CGL policy. In the alternative, Westfield argued that even if the claims were for property damage caused by an occurrence, they were removed from coverage by an exclusion in the policy.
{¶ 4} Westfield and Custom filed cross-motions for summary judgment. The parties agreed that the case was governed by Ohio law, and the United States District Court for the Northern District of Ohio acknowledged that it was an open question under Ohio law whether defective-construction claims fall under the auspices of a CGL policy. Rather than decide the issue, the district court assumed that Custom’s policy covered defective construction and went on to find that the exclusion removed such claims from coverage. After reconsideration of an earlier order, the district court granted summary judgment for Westfield. Younglove Constr., L.L.C. v. PSD Dev., L.L.C., 767 F.Supp.2d 820 (N.D.Ohio 2011).
{¶ 5} Custom appealed the summary judgment in favor of Westfield. West-field moved to certify two questions of state law to this court. Custom did not oppose the motion.
{¶ 6} In a divided decision, the Sixth Circuit determined that the question of whether defective construction or workmanship constitutes an “occurrence” with *478 in the meaning of a CGL policy in Ohio might be determinative of the action in federal court. Furthermore, the Sixth Circuit found no controlling precedent on the issue in our decisions. For those reasons, the Sixth Circuit certified the following two questions of state law to this court pursuant to S.CtPrac.R. 18.1:
(1) Are claims of defective construction/workmanship brought by a property owner claims for “property damage” caused by an “occurrence” under a commercial general liability policy?
(2) If such claims are considered “property damage” caused by an “occurrence,” does the contractual liability exclusion in the commercial general liability policy preclude coverage for claims for defective construction/workmanship?
{¶ 7} We agreed to answer both questions. Westfield Ins. Co. v. Custom Agri Sys., Inc., 130 Ohio St.3d 1415, 2011-Ohio-5605, 956 N.E.2d 307.
Analysis

First Certified State-Law Question

{¶ 8} The underlying claim is one of defective construction of or workmanship on the steel grain bin by Custom. The present action is one of contract interpretation, as the issue is whether the claims of defective construction or workmanship against Custom fall within the insurance policy issued by Westfield.
When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos. (1999), 86 Ohio St.3d 270, 273, 714 N.E.2d 898, citing Employers’ Liab. Assur. Corp. v. Roehm (1919), 99 Ohio St. 343, 124 N.E. 223, syllabus. See, also, Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. Kelly v. Med. Life Ins. Co. (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. Id. As a matter of law, a *479 contract is unambiguous if it can be given a definite legal meaning. Gulf Ins. Co. v. Burns Motors, Inc. (Tex.2000), 22 S.W.3d 417, 423.
Westfield Ins. Co. v. Galatis, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.
{¶ 9} The insurance policy here provides:
COMMERCIAL GENERAL LIABILITY COVERAGE FORM
SECTION I — COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies. We will have the right and duty to defend the insured against any “suit” seeking those damages. However, we will have no duty to defend the insured against any “suit” seeking damages for “bodily injury” or “property damage” to which this insurance does not apply. We may, at our discretion, investigate any “occurrence” and settle any claim or “suit” that may result. But:
(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
b. This insurance applies to “bodily injury” and “property damage” only if:
(1) The “bodily injury” or “property damage” is caused by an “occurrence” that takes place in the “coverage territory;”
SECTION V — DEFINITIONS
3. “Bodily injury” means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
*480 13. “Occurrence” means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
17. “Property damage” means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at- the time of the “occurrence” that caused it.
{¶ 10} CGL policies are
not intended to protect business owners against every risk of operating a business. In particular, [these] policies * * * are not intended to insure “business risks” [see generally Franco, Insurance Coverage for Faulty Workmanship Claims under Commercial General Liability Policies, 30 Tort & Ins.L.J. 785 (1994)] — risks that are the “ ‘normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.’ ” [Columbia Mut. Ins. Co. v. Schauf 967 S.W.2d 74, 77 (Mo.1998), quoting James T. Hendrick and James P. Wiezel, The New Commercial General Liability Forms — An Introduction and Critique, Fedn. of Ins. & Corporate Counsel Quarterly 319, 322 (Summer 1986).] Courts generally conclude that the policies are intended to insure the risks of an insured causing damage to other persons and their property, but that the policies are not intended to insure the risks of an insured causing damage to the insured’s own work. [Id.} In other words, the policies do not insure an insured’s work itself; rather, the policies generally insure consequential risks that stem from the insured’s work.
Heile v. Herrmann, 136 Ohio App.3d 351, 353, 736 N.E.2d 566 (1st Dist.1999). See also ACUITY v. Burd & Smith Constr., Inc., 2006 ND 187, 721 N.W.2d 33, ¶ 12 (holding that a claim of faulty workmanship that results in damage to property other than the work product is an accident and that “a CGL policy is not intended to insure business risks that are the normal, frequent, or predictable consequences of doing business and which businesses can control and manage. * * * A CGL policy does not insure the insured’s work itself; rather, it insures consequential damages that stem from that work. * * * As a result, a CGL *481 policy may provide coverage for claims arising out of tort, breaches of contract, and statutory liabilities as long as the requisite accidental occurrence and property damage are present”); Century Indemn. Co. v. Golden Hills Builders, Inc., 348 S.C. 559, 565-566, 561 S.E.2d 355 (2002) (holding that under a CGL policy, an insurer had no duty to defend its insured in an action resulting from faulty workmanship and that a CGL policy “ ‘is not intended to insure business risks, i.e., risks that are the normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.’ [Rowland H. Long, The Law of Liability Insurance] § 10.01[1]. Specifically, ‘the policies do not insure [an insured’s] work itself, but rather, they generally insure consequential risks that stem from that work.’ Id.”).
{¶ 11} Here, all of the claims against which Westfield is being asked to defend and indemnify Custom relate to Custom’s work itself, i.e., the alleged defective construction of and workmanship on the steel grain bin. Although it is a widely accepted principle that such claims are not covered by CGL policies, our inquiry cannot and must not end there. The issue we must decide is whether the CGL policy in the present case provides coverage to Custom for its alleged defective construction of and workmanship on the steel grain bin. Specifically, we must decide whether Custom’s alleged defective construction of and workmanship on the steel grain bin constitute property damage caused by an “occurrence.”
{¶ 12} In the CGL policy here, the word “occurrence” is defined as “an accident, including continuous or repeated exposure to substantially the same general harmful conditions.” The word “accident,” however, is not defined in the CGL policy. Therefore, “accident” must be given its “natural and commonly accepted meaning.” Gomolka v. State Auto. Mut. Ins. Co., 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982).
{¶ 13} We have defined “accidental” as “unexpected, as well as unintended.” Hybud Equip. Corp. v. Sphere Drake Ins. Co., 64 Ohio St.3d 657, 666, 597 N.E.2d 1096 (1992). In defining the ordinary meaning of “accident” in the context of a CGL policy that, too, did not include a definition of the word, our sister court in Kentucky held, “Inherent in the plain meaning of ‘accident’ is the doctrine of fortuity. Indeed, ‘[t]he fortuity principle is central to the notion of what constitutes insurance * * *.’ ” Cincinnati Ins. Co. v. Motorists Mut. Ins. Co., 306 S.W.3d 69, 74 (Ky.2010), quoting Corpus Juris Secundum, Insurance, Section 1235 (2009). Similarly, the Eleventh District has held:
“ ‘Insurance coverage is bottomed on the concept of fortuity. Applying this rule in the construction context, truly accidental property damage generally is covered because such claims and risks fit within the statistical abstract. Conversely, faulty workmanship claims generally are not cov *482 ered, except for their consequential damages, because they are not fortuitous. In short, contractors’ “business risks” are not covered by insurance, but derivative damages are. The key issues are whether the contractor controlled the process leading to the damages and whether the damages were anticipated.
“ ‘Coverage analysis largely turns On the damages sought. If the damages are for the insured’s own work, there is generally no coverage. If the damages are consequential and derive from the work the insured performed, coverage generally will lie. The underwriting intent is to exclude coverage for the contractor’s business risks, but provide coverage for unanticipated consequential damages.’ ” (Emphasis added.) [Indiana Ins. Co. v. Alloyd Insulation Co., 2d Dist. No. 18979, 2002-Ohio-3916, 2002 WL 1770491] ¶ 27-28, quoting Franco, Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies (1994), 30 Tort and Ins. L.J. 785, 785-787.
JTO, Inc. v. State Auto. Mut. Ins. Co., 194 Ohio App.3d 319, 2011-Ohio-1452, 956 N.E.2d 328, ¶ 32-33 (11th Dist.).
{¶ 14} We agree that claims for faulty workmanship, such as the one in the present case, are not fortuitous in the context of a CGL policy like the one here. In keeping with the spirit of fortuity that is fundamental to insurance coverage, we hold that the CGL policy does not provide coverage to Custom for its alleged defective construction of and workmanship on the steel grain bin. Our holding is consistent with the majority of Ohio courts that have denied coverage for this type of claim. The majority view is that claims of defective construction or workmanship are not claims for “property damage” caused by an “occurrence” under a CGL policy. E.g., Bogner Constr. Co. v. Field & Assocs., 5th Dist. No. 08-CA-11, 2009-Ohio-116, 2009 WL 91300, at ¶ 51 and 44 (holding that there was no coverage because “there was no ‘occurrence’ within the meaning of the policy” because “defective workmanship does not constitute an accident or an ‘occurrence’ under a Commercial General Liability policy”); Paramount Parks, Inc. v. Admiral Ins. Co., 12th Dist. No. CA2007-05-0666, 2008-Ohio-1351, 2008 WL 757533, at ¶ 25 (holding that “a CGL policy such as the one at issue here does not insure against claims for defective or negligent workmanship or construction because defective workmanship does not constitute an ‘accident,’ and therefore claims for defective or negligent workmanship do not constitute an occurrence under the policy”); Westfield Ins. Co. v. Coastal Group, Inc., 9th Dist. No. 05CA008664, 2006-Ohio-153, 2006 WL 120041, at ¶ 9-10 (holding that a contractor’s delay in remedying deficiencies in its work is a claim for economic losses and “not an ‘accident’ and therefore, not an ‘occurrence’ ”); Heile v. Herrmann, 136 *483 Ohio App.3d 351, 353-354, 736 N.E.2d 566 (1st Dist.1999) (holding that “courts in Ohio, as well as the majority of courts in jurisdictions throughout the country, have concluded that defective workmanship does not constitute an ‘occurrence’ in [CGL] policies” [footnotes omitted]).
{¶ 15} In Bogner, the insurance policy at issue defined “occurrence” as “ ‘an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the Insured.’ ” Bogner, 2009-Ohio-116, 2009 WL 91300, at ¶ 41. The Fifth Appellate District held:
“[T]here is no coverage under a general comprehensive liability policy since defective workmanship does not constitute an ‘accident’ and since, without an ‘accident,’ there can be no occurrence as such term is defined in the insurance policy. * * *
“Accordingly, since there was, therefore, no property damage caused by an ‘occurrence,’ which the general commercial liability insurance policy in this matter defines as an ‘accident,’ [the insured] was not entitled to coverage under such policy.”
Id. at ¶ 46-48, quoting Environmental Exploration Co. v. Bituminous Fire & Marine Ins., Co., Stark App. No. 1999CA00315, 2000 WL 1608908 at *6 (Oct. 16, 2000).
{¶ 16} Similarly, in Essex Ins. Co. v. Holder, 370 Ark. 465, 261 S.W.3d 456 (2008), the Arkansas Supreme Court reached the same result. The issue was “whether defective construction or workmanship is an ‘accident’ and, therefore, an ‘occurrence’ within the meaning of commercial general liability insurance policies.” Id., at 457. In Essex, a couple had contracted with a builder to build a home. Before the home was completed, the couple sued the builder, seeking damages for breach of contract, breach of an express warranty, breach of implied warranties, and negligence. They alleged that they had suffered damages from the builder’s delays, employment of incompetent subcontractors, and defective or incomplete construction. The builder then demanded that Essex Insurance Company defend him in the action under his CGL policies.
{¶ 17} Essex asserted that there was no coverage under any of the CGL policies for the alleged damages. The federal district court certified this question of Arkansas law to the Arkansas Supreme Court to decide.
{¶ 18} The Arkansas court held that “the contractor’s obligation to repair or replace its subcontractor’s defective workmanship could not be deemed unexpect *484 ed on the part of the contractor, and therefore, failed to constitute an ‘event’ for which coverage existed under the policy.” Id. at 459, citing Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co., 354 F.Supp.2d 917, 921-922 (E.D.Ark. 2005). Therefore, the Arkansas Supreme Court held that “defective workmanship standing alone — resulting in damages only to the work product itself — is not an occurrence under a CGL policy.” Id. And as the court pointed out, to protect itself from faulty performance by a subcontractor, a contractor can require the subcontractor to provide a performance bond.
{¶ 19} Based on our review of the purpose of a CGL policy and of the majority view of our appellate courts that have addressed this issue and the view of our sister court in Arkansas, we hold that claims of defective construction or workmanship brought by a property owner are not claims for “property damage” caused by an “occurrence” under a commercial general liability policy such as the one in the present case.

Second Certified State-Law Question

{¶ 20} Because we answered the first question in the negative, the second certified state-law question is moot.
Conclusion
{¶ 21} We answer the first certified state-law question in the negative and hold that claims of defective construction or workmanship brought by a property owner are not claims for “property damage” caused by an “occurrence” under a commercial general liability policy. We do not reach the second certified state-law question, as it is unnecessary to do so.
So answered.
Lundberg Stratton, Lanzinger, Cupp, and McGee Brown, JJ., concur.
O’Donnell, J., concurs in judgment only.
Pfeifer, J., dissents.