[Cite as *Reggie Constr. v. Westfield Ins. Co.*, 2014-Ohio-3769.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| REGGIE CONSTRUCTION, LTD., et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2013-L-095** |
| WESTFIELD INSURANCE CO., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 12 CV 000211.

Judgment: Affirmed.

*Erik L. Walter* and *Grant J. Keating,* Dworken & Bernstein Co., L.P.A., 60 South Park Place, Painesville, OH 44077 (For Plaintiffs-Appellants).

*Richard M. Garner,* Davis & Young, 140 Commerce Park Drive, Suite C, Westerville, OH 43082 (For Defendant-Appellee).

CYNTHIA WESTCOTT RICE, J.

{¶1} Appellants, Reggie Construction, LTD, et al., appeal from the trial court's entry of summary judgment in favor of appellee, Westfield Insurance Co. At issue is whether appellee had a duty to defend and indemnify appellants in an underlying lawsuit, pursuant to a commercial general liability ("CGL") insurance policy issued by appellee. For the reasons that follow, we affirm.

{¶2} In October 2003, appellants began excavation on a lot in Lake County, Ohio, with the intention of building a single-family residence. By December 2003, the

home was framed and, by mid-to-late February 2004, the roof and windows had been installed. In 2006, the home was sold to Jamel M. White, Jennifer M. White and JW30, LLC ("the Whites") for $685,000.

**{¶3}** After the Whites moved into the home, they allegedly began to suffer from mold-related illnesses. In June 2009, they had the home inspected by a mold remediation company, which conducted tests and offered the Whites certain proposals to remedy the purported mold problems in the home. The Whites subsequently filed a complaint against appellants, alleging seven claims for relief, to wit: breach of contract, fraud, negligence, fraudulent misrepresentation, innocent misrepresentation, breach of warranties of fitness and habitability, and rescission. The complaint was premised upon the Whites' allegations that appellants allowed the home to remain open through the winter season. As a result, the White's alleged, the structure flooded, which caused the home to be severely impacted by mold.

**{¶4}** At all times relevant to the allegations, appellants were insured by appellee under various renewals of commercial general liability ("CGL") Policy No. CWP3802636. Appellants sought defense and indemnity against the Whites' lawsuit by operation of the policy. Pursuant to the policy, appellee was obligated to defend and indemnify appellants, in pertinent part, for bodily and/or property damage caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Moreover, the policy expressly excluded coverage for damage resulting from "fungi or bacteria." According to the policy, fungi includes "mold or mildew and any myocotoxins, spores, scents or byproducts produced or released by fungi."

2

{¶5} Based upon the Whites' allegations and the exclusions in the policy, appellee declined to defend or indemnify appellants in the 2009 litigation. In early 2010, appellants filed a complaint for declaratory judgment seeking defense and indemnity under the CGL policy. That action was voluntarily dismissed, however, in May 2011. Shortly thereafter, the Whites voluntarily dismissed their complaint against appellants.

{¶6} The Whites re-filed their suit against appellants approximately two months after the dismissal. The allegations in the Whites' 2011 litigation substantially tracked the allegations set forth in the 2009 complaint with the following exceptions: the complaint neither directly referenced mold or illnesses related to mold and it added a count for breach of fiduciary duty. The modified allegations asserted, inter alia, that appellants, through carelessness and/or ignorance, allowed the property to sit open and flood and the inaction caused general damage to the property.

{¶7} In January 2012, appellants re-filed their complaint against appellee, seeking declaratory judgment and damages for breach of contract and breach of fiduciary duty. Appellee answered appellants' complaint and filed a counterclaim for declaratory judgment based upon its position that it had no obligation to defend or indemnify appellants in the Whites' re-filed action. Appellee subsequently moved for judgment on the pleadings, which appellants duly opposed.

{¶8} On August 24, 2012, the trial court granted appellee's motion in part and denied the motion in part. The court specifically concluded that appellee had no duty to defend or indemnify appellant against the Whites' allegations of fraud, misrepresentation, and rescission. The court, however, declined to award appellee judgment on the Whites' allegations of breach of contract, negligence, and breach of warranties. The court reasoned that, construing these claims and all reasonable

3

inferences in appellants' favor, it could not conclude, as a matter of law, that appellants could prove no set of facts entitling them to a defense and/or indemnity.

{¶9} After conducting discovery, appellee filed a motion for summary judgment on June 14, 2013. In its motion, appellee argued it was not obligated to defend or indemnify appellants for the Whites' remaining claims because: (1) any damages arising from mold problems were expressly excluded by the CGL policy; and (2) any other damage alleged by the Whites did not constitute property damage caused by an "occurrence," a necessary precondition to trigger coverage under the CGL policy. Thus, appellee concluded, there were no genuine issues of material fact and, as a result, it was entitled to judgment as a matter of law.

{¶10} Meanwhile, on June 27, 2014, a judgment in the amount of $735,000 was entered against appellants in the White litigation. The record indicates appellants could not afford to defend themselves through trial in that case and therefore confessed judgment.

{¶11} After judgment was entered in the White proceeding, appellants filed a memorandum in opposition to appellee's motion for summary judgment. In support, appellants acknowledged that claims for defective workmanship and mold are excluded under the policy. They argued, however, the claims asserted by the Whites were not limited to defective workmanship or mold. Instead, appellants asserted, the Whites also sought damages that resulted from ongoing water infiltration and moisture events, which were occurring as a consequence of appellants' faulty workmanship; consequential damages which, appellants maintained, are covered under the policy. To support their position, appellants submitted an expert report, used by the Whites in the underlying

4

suit against appellants, to establish the alleged consequential nature of the damages. To wit, appellants asserted:

{¶12} The Whites have offered evidence in the form of an expert report by Marko E. Vovk ("The Vovk Report") in the White Proceeding that demonstrates property damage occurred as a result of Plaintiff's defective work * * *. Mr. Vovk also makes specific findings in his report: failure of cultured stone cladding as result of moisture, insects and animal infiltration due to poor construction; uplift in shingles due to prior moisture event in Property; damage to the downspout, underground piping, front porch and back patio due to poor compaction of soil during construction; holes in the Property's exterior allowing access to moisture, insects and vermin as result of poor installation or compaction of soil during the construction process; rusty black pipes in basement due to past moisture events; infestation of carpenter ants on the southwest corner of Property due to water infiltration.

{¶13} According to appellants, the Vovk report demonstrates that the property sustained ongoing moisture and humidity events as a consequence of defective workmanship. Thus, they maintained genuine issues of material fact remain as to whether the property damage was an "occurrence" triggering coverage under the policy.

{¶14} On September 19, 2013, the trial court issued its order granting appellee summary judgment. In the entry, the trial court noted that the parties conceded the claims for defective workmanship and mold are excluded from coverage. The court determined, however, appellants presented no evidence to support their position that

the Whites' claims were not limited to defective workmanship or mold. The trial court reasoned:

{¶15} In his deposition, one of the plaintiffs, Michael Regalbuto[, owner of appellant RB Construction], testified that the only injuries he was aware of complained of by the Whites were defective workmanship and mold. * * * The plaintiffs attach what appears to be an expert report to their brief in opposition that discusses problems with a home, although it does not identify what home. Even assuming that it is the home at issue in the underlying lawsuit, all of the issues identified in the report are defective workmanship. There is nothing in the report opining that the allegedly defective work caused some sort of consequential damage, other than mold growth.

{¶16} The trial court consequently declared appellee was entitled to judgment as a matter of law. Appellants filed a timely notice of appeal and assign three errors for this court's review, each of which challenge the entry of summary judgment.

{¶17} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated; (2) "the moving party is entitled to judgment as a matter of law;" and (3) "it appears from the evidence * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence * * * construed most strongly in the party's favor." A trial court's decision to grant summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77

Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." (Citation omitted.) *Peer v. Sayers*, 11th Dist. Trumbull No. 2011-T-0014, 2011-Ohio-5439, ¶27

{¶18} To avoid redundancy in our analysis, the assignments of error shall be considered together. They provide:

{¶19} "[1.] The trial court erred by granting Westfield's motion for summary judgment because a genuine issue of material fact existed as to whether the claims in the White proceeding were covered under the policy.

{¶20} "[2.] The trial court erred in holding that Westfield was not obligated to defend appellants in the White proceeding.

{¶21} "[3.] The trial court erred in granting Westfield judgment on appellants' claim for indemnification."

{¶22} Appellants' assigned errors collectively assert there are genuine issues of material fact for trial regarding whether appellee was obligated, under the CGL policy, to defend and, later, indemnify them in the White proceeding. Resolution of this general argument requires this court to consider the CGL policy issued by appellee. It is well settled that a reviewing court, when confronted with an issue of contractual interpretation, must give effect to the intent of the parties. *See e.g. Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999). When considering an insurance contract, a court presumes the intent of the parties is manifested in the language of the policy. *Kelly v. Medical Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. "When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties."

7

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶11. A contract is unambiguous as a matter of law if it can be given a definite legal meaning. *Id.*

{¶23} The insurance policy at issue in this case provides, in relevant part:

{¶24} SECTION I - COVERAGES

{¶25} COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

{¶26} 1. Insuring agreement

{¶27} a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

{¶28} * * *

{¶29} b. This insurance applies to "bodily injury" and "property damage" only if:

{¶30} (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"

{¶31} * * *

{¶32} SECTION V – DEFINITIONS

{¶33} * * *

8

{¶34} 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

{¶35} * * *

{¶36} 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

{¶37} * * *

{¶38} 17. "Property damage" means

{¶39} a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

{¶40} b. Loss of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

{¶41} As indicated above, both parties acknowledge that the policy unequivocally excludes coverage from any bodily injury or property damage caused by mold. They also acknowledge that appellee's rights and duties are not triggered under the policy by claims of faulty or defective workmanship. *See Westfield Ins. Co. v. Custom Agri-Systems, Inc.*, 133 Ohio St.3d 476, 2012-Ohio-4712, syllabus ("Claims of defective construction or workmanship brought by a property owner are not claims for 'property damage' caused by an 'occurrence' under a commercial general liability policy.") Appellants assert the damages alleged by the Whites were not limited to claims for damages resulting from mold or defective workmanship claims, but also included

9

damages caused by the defective workmanship, i.e., consequential damages. Appellants specifically contend that there are issues of fact regarding whether the ongoing moisture and humidity events, which they contend are results of defective workmanship, are "occurrences" under the policy.

{¶42} In the CGL policy under consideration, the word "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The word "accident" is not defined in the policy. Hence, the term must be given its "natural and commonly accepted meaning." *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168 (1982). This court has defined the term "accident" as follows:

{¶43} "An 'accident is an event proceeding from an unexpected happening or unknown cause without design and not in the usual course of things; an event that takes place without one's expectation; an undesigned, sudden and unexpected event; an event which proceeds from an unknown cause or is an unusual effect of a known cause and, therefore, unexpected." *Westfield Cos. v. Gibbs*, 11th Dist. Lake No. 2004-L-058, 2005-Ohio-4210, ¶17 (quotation omitted).

{¶44} The Ohio Supreme Court has also emphasized that "'[i]nherent in the plain meaning of "accident" is the doctrine of fortuity. Indeed, '[t]he fortuity principle is central to the notion of what constitutes insurance * * *.'"" *Custom Agri Systems, Inc.*, *supra*, at ¶13, quoting *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky.2010), quoting Corpus Juris Secundum, Insurance, Section 1235 (2009). Applying this principle in the context of a contractor, "truly accidental property damage generally is covered because such claims and risks fit within the statistical abstract. Conversely, faulty workmanship claims generally are not covered, except for their consequential

10

damages, because they are not fortuitous." *JTO, Inc. v. State Auto. Mut. Ins. Co.*, 194 Ohio App.3d 319, 2011-Ohio-1452, ¶31-32 (11th Dist.), quoting *Ind. Ins. Co. v. Alloyd Insulation Co.*, 2d Dist. Montgomery No. 18979, 2002-Ohio-3916, ¶27-28.

{¶45} In this case, the Whites' causes of action were premised upon damages to the home resulting from ongoing moisture and humidity events. The issue, therefore, is whether these events, viewed in a light most favorable to appellants, can be construed as unexpected or "fortuitous." We hold they are not.

{¶46} Appellants rely significantly on the Vovk report to support their position. The trial court rightly pointed out that the report merely "discusses problems with *a home*, although it does not identify what home." (Emphasis added.) And, even assuming that the home referred to in the report is the home at issue, the report does not appear to be competent evidence as contemplated by Civ.R. 56. To wit, it is not a pleading, deposition, answer to an interrogatory, a written admission, affidavit, transcript of evidence, or a written stipulation. Moreover, it is not referred to in an affidavit nor is it certified or sworn to. Assuming, arguendo, however, these deficiencies did not exist, the damage described in the report cannot be characterized as an "accident" and thus cannot be viewed as an "occurrence" under the policy.

{¶47} A foreseeable and therefore non-fortuitous result of poor workmanship on a home is the infiltration of moisture and humidity. All of the damages that purportedly went beyond allegations of defective workmanship were ascribed to the infiltration of moisture and humidity. The Supreme Court of Ohio has observed that CGL policies do not exist to protect business owners against business risks, i.e., those risks that are the "'normal, frequent, or predictable consequences of doing business, and which business management can and should control or manage.'" *Custom Agri Systems, Inc., supra*,

11

¶10, quoting *Columbia Mut. Ins. Co. v. Schauf*, 967 S.W.2d 74, 77 (Mo. 1998), quoting James T Hendrick and James P. Wiezel, *The New Commercial General Liability Forms –An Introduction and Critique*, Fedn. Of Ins. & Corporate Counsel Quarterly 319, 322 (Summer 1986). Instead,

**{¶48}** [c]ourts generally conclude that the policies are intended to insure the risks of an insured causing damage to other persons and their property but that the policies are not intended to insure the risks of an insured causing damage to the insured's own work. [*Id.*] In other words, the policies do not insure an insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work. *Custom Agri Systems, Inc., supra*, ¶10, quoting *Heile v. Herrmann*, 136 Ohio App.3d 351, 353 (1st Dist.1999).

**{¶49}** Accordingly, a CGL policy "'does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.'" *Alloyd Insulation Co., supra,* at ¶29 quoting *Weedo v. Stone-E-Brick*, 81 N.J. 233, 249 (1979).

**{¶50}** In his deposition, appellant Michael Regalbuto, appellants' representative, testified the only allegations of which he was aware in the White litigation were those related to his company's "bad work." And, while the ongoing moisture and humidity problems may be consequences of this "bad work," the record is devoid of any evidence that these events were anything other than "an accident of faulty workmanship" in this case.

**{¶51}** Moreover, moisture and humidity events are within the gamut of "business risks" a contractor must contemplate in the course of building a structure. The ongoing

12

moisture and humidity events were, accordingly, predictable consequences of poor workmanship, which appellants could have controlled during the building process. We therefore conclude any property damage upon which the Whites' causes of action were premised, beyond that which was clearly excluded by the policy, did not involve "occurrences." As a result, we hold, as a matter of law, appellee had no duty to defend and has no duty to indemnify appellants under the CGL policy.

{¶52} Appellants' three assignments of error are without merit.

{¶53} For the reasons discussed above, the judgment of the Lake County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.

13