[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio N. Univ. v. Charles Constr. Servs., Inc.,* Slip Opinion No. 2018-Ohio-4057.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-4057

OHIO NORTHERN UNIVERSITY, APPELLEE, *v.* CHARLES CONSTRUCTION SERVICES, INC., APPELLEE, ET AL.; CINCINNATI INSURANCE COMPANY, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Ohio N. Univ. v. Charles Constr. Servs., Inc.,* Slip Opinion No. 2018-Ohio-4057.]

*Insurance claims—"Occurrence"—Subcontractor faulty workmanship—Insurer is not required to defend a commercial-general-liability policyholder against suit by property owner, because subcontractor faulty workmanship is not fortuitous—Custom Agri, applied.*

(No. 2017-0514—Submitted June 12, 2018—Decided October 9, 2018.)

APPEAL from the Court of Appeals for Hancock County,

No. 5-16-01, 2017-Ohio-258.

_____

**FRENCH, J.**

{¶ 1} In 2012, we held that an insurance claim filed by a contractor under its commercial general liability ("CGL") insurance policy for property damage

caused by the contractor's own faulty workmanship does not involve an "occurrence" such that the CGL policy would cover the loss. *Westfield Ins. Co. v. Custom Agri Sys., Inc.*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, syllabus. That decision turned on the CGL policy's definition of "occurrence" as an " 'accident, including continuous or repeated exposure to substantially the same general harmful conditions.' " *Id.* at ¶ 12, quoting the policy. Because the CGL policy did not define "accident," we looked to the word's common meaning and concluded that an "accident" involves "fortuity." *Id.* at ¶ 14. We held that under the language of the CGL policy, property damage caused by a contractor's own faulty work is not accidental and is therefore not covered. *Id.* at ¶ 11-14, 19.

{¶ 2} This appeal concerns a general contractor's CGL policy that is nearly identical to the one considered in *Custom Agri*. But here, the question is whether the general contractor's CGL policy covers claims for property damage caused by a *subcontractor's* faulty work. To answer that question, we must address the effect of additional portions of the CGL policy, including a products-completed operations-hazard ("PCOH") clause, which covers damages "arising out of completed operations," and terms that specifically apply to work performed by subcontractors.

{¶ 3} To resolve this matter, we need only apply the holding of *Custom Agri*. Property damage caused by a subcontractor's faulty work is not an "occurrence" under a CGL policy because it cannot be deemed fortuitous. Hence, the insurer is not required to defend the CGL policy holder against suit by the property owner or indemnify the insured against any damage caused by the insured's subcontractor. We therefore reverse the judgment of the court of appeals.

## FACTS AND PROCEDURAL BACKGROUND

{¶ 4} In 2008, appellee Ohio Northern University ("ONU") contracted with appellee Charles Construction Services, Inc., to build The University Inn and Conference Center, a new luxury hotel and conference center on ONU's campus.

Charles Construction promised to perform all the work itself or through subcontractors. The contract required Charles Construction to maintain a CGL policy that included a PCOH clause.

{¶ 5} Charles Construction obtained from appellant, Cincinnati Insurance Company ("CIC"), a CGL policy that included a PCOH clause and terms specifically related to work performed by subcontractors. The general liability maximum payout under the CGL policy was $2 million. The separate maximum payout for the PCOH clause was also $2 million. Charles Construction paid an additional premium for the PCOH coverage.

{¶ 6} The project's estimated cost was $8 million. In September 2011, after work was completed, ONU discovered that the inn had suffered extensive water damage from hidden leaks that it believed were caused by the defective work of Charles Construction and its subcontractors. In the course of repairing the water damage, ONU discovered other serious structural defects. ONU estimated its repair costs at approximately $6 million.

{¶ 7} In October 2012, ONU sued Charles Construction in the Hancock County Common Pleas Court for breach of contract and other claims related to the inn's damage. Charles Construction answered and filed third-party complaints against several of its subcontractors. ONU filed its second and final amended complaint in February 2014. Charles Construction submitted to CIC a CGL-policy claim and asked CIC to defend it in court and indemnify it against any damages. CIC intervened in order to pursue a declaratory judgment against Charles Construction and to submit jury interrogatories related to insurance coverage. CIC explained that it would defend Charles Construction while reserving its right to argue that the CGL policy did not cover ONU's claim.

{¶ 8} After CIC intervened, it sought a declaratory judgment that it did not have to defend or indemnify Charles Construction under the CGL policy. In January 2015, CIC filed a motion for summary judgment relying on *Custom Agri*,

which it characterized as holding that "claims for defective workmanship are not claims for 'property damage' caused by an 'occurrence.'" ONU filed a cross-motion for summary judgment arguing, in part, that the PCOH clause and subcontractor-specific terms distinguished this case from *Custom Agri*. Charles Construction filed a memorandum supporting ONU's position. The trial court issued judgments in favor of CIC, reasoning that this court's decision in *Custom Agri* "constrained" it and that consequently, CIC could deny Charles Construction's claim and had no duty to defend Charles Construction.

**{¶ 9}** Charles Construction and ONU appealed to the Third District Court of Appeals. The majority determined that *Custom Agri* remains good law as applied to construction defects caused by the insured's own work. 2017-Ohio-258, 77 N.E.3d 538, ¶ 38. But the Third District read *Custom Agri* narrowly and noted that it did not address any PCOH or subcontractor-specific CGL-policy terms. *Id.* at ¶ 34-40. It found the CGL policy language to be ambiguous as to whether it covers claims for property damage caused by subcontractors' defective work, and because ambiguous language is construed against the insurer, it reversed the judgment of the trial court. *Id.* at ¶ 41.

**{¶ 10}** We accepted Cincinnati Insurance Company's appeal on two propositions of law:

> 1. *Westfield Ins. Co. v. Custom Agri Systems, Inc.*, 133 Ohio St.3d 476, 2012-Ohio-4712 remains applicable to claims of defective construction or workmanship by a subcontractor included within the "products-completed operations hazard" of [sic] commercial general liability policy.
>
> 2. The contractual liability exclusion in the general liability policy precludes coverage for claims for defective construction/workmanship.

4

151 Ohio St.3d 1452, 2017-Ohio-8842, 87 N.E.3d 221. CIC withdrew its second proposition of law during briefing.

## ANALYSIS

### *Standard of review*

{¶ 11} This case involves basic contract interpretation. When we face an issue of contractual interpretation, our role "is to give effect to the intent of the parties to the agreement." *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11, citing *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999). We review an insurance contract as a whole and presume that its language reflects the parties' intent. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph one of the syllabus. "We apply the de novo standard of review to a decision granting or denying a motion for summary judgment based on an insurance contract." *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 12. We honor the plain meaning of the policy's language "unless another meaning is clearly apparent from the contents of the policy." *Galatis* at ¶ 11, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus. And when a written contract's language is clear, we look no further than the writing itself to determine the parties' intent. *Alexander* at paragraph two of the syllabus.

### Custom Agri

{¶ 12} In *Custom Agri*, we answered a certified question from the United States Court of Appeals for the Sixth Circuit concerning a defective-construction lawsuit involving a property owner and a general contractor for faulty construction of a steel bin. *Custom Agri*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, at ¶ 2. The contractor filed a third-party complaint against Custom Agri, the subcontractor who was responsible for building the defective steel bin. *Id.*

**{¶ 13}** Custom Agri had obtained a CGL policy from Westfield Insurance Company. *Id.* Westfield intervened and sought a declaratory judgment that it had no duty to defend or indemnify Custom Agri under the CGL policy because Custom Agri's claims did not involve "property damage" caused by an "occurrence." *Id.* at ¶ 3.

**{¶ 14}** We noted that the general principle underlying CGL policies is that they are not intended to protect business owners from ordinary business risks. *Id.* at ¶ 10, citing *Heile v. Herrmann*, 136 Ohio App.3d 351, 353, 736 N.E.2d 566 (1st Dist.1999). " 'Courts generally conclude that the policies are intended to insure the risks of an insured causing damage to other persons and their property, but that the policies are not intended to insure the risks of an insured causing damage to the insured's own work.' " *Custom Agri* at ¶ 10, quoting *Heile* at 353. " 'In other words, the policies do not insure an insured's work itself; rather, the policies generally insure consequential risks that stem from the insured's work.' " *Custom Agri* at ¶ 10, quoting *Heile* at 353.

> [A] CGL policy is not intended to insure business risks that are the normal, frequent, or predictable consequences of doing business and which businesses can control and manage. * * * A CGL policy does not insure the insured's work itself; rather, it insures consequential damages that stem from that work. * * * As a result, a CGL policy may provide coverage for claims arising out of tort, breaches of contract, and statutory liabilities as long as the requisite accidental occurrence and property damage are present.

*Custom Agri* at ¶ 10, quoting *ACUITY v. Burd & Smith Constr., Inc.*, 2006 ND 187, 721 N.W.2d 33, ¶ 12.

**{¶ 15}** We noted that all the claims against which Westfield was asked to defend and indemnify Custom Agri were related to Custom Agri's own work. *Id.* at ¶ 11. But we continued to analyze the CGL policy's specific terms and considered whether Custom Agri's faulty work could still be considered "property damage" caused by an "occurrence" under the policy. *Id.*

**{¶ 16}** As in this case, the CGL policy in *Custom Agri* defined "occurrence" as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Custom Agri* at ¶ 12. But the CGL policy did not define "accident." *Id.* We determined that we had to give the word its " 'natural and commonly accepted meaning.' " *Id.*, quoting *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982).

**{¶ 17}** We noted that we had previously defined "accidental" as " 'unexpected, as well as unintended.' " *Custom Agri*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, at ¶ 13, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 666, 597 N.E.2d 1096 (1992). And we agreed with our sister court in Kentucky that in the context of a CGL policy, " '[i]nherent in the plain meaning of "accident" is the doctrine of fortuity.' " *Custom Agri* at ¶ 13, quoting *Cincinnati Ins. Co. v. Motorists Mut. Ins. Co.*, 306 S.W.3d 69, 74 (Ky.2010). We added that " ' "[t]he fortuity principle is central to the notion of what constitutes insurance." ' " *Custom Agri* at ¶ 13, quoting *Cincinnati Ins. Co.* at 74, quoting 46 Corpus Juris Secundum, Insurance, Section 1235 (2009); *see also Indiana Ins. Co. v. Alloyd Insulation Co.*, 2d Dist. Montgomery No. 18979, 2002-Ohio-3916, ¶ 27, quoting Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Torts & Ins.L.J. 785 (1994) ( " '[F]aulty workmanship claims generally are not covered, except for their consequential damages, because they are not fortuitous. In short, contractors' "business risks" are not covered by insurance, but derivative damages are. The key

issues are whether the contractor controlled the process leading to the damages and whether the damages were anticipated' ").

{¶ 18} We concluded that "claims for faulty workmanship, such as the one in the present case, are not fortuitous in the context of a CGL policy like the one here." *Custom Agri* at ¶ 14. Therefore, they "are not claims for 'property damage' caused by an 'occurrence' under a [CGL] policy such as the one in the present case." *Id.* at ¶ 19.

### *The CGL policy*

{¶ 19} As in *Custom Agri*, our decision here depends on the specific terms of the CGL policy, including the PCOH and subcontractor-specific language. CIC submits that we considered in *Custom Agri*, at least indirectly, the same contractual language before us now, because Custom Agri was a subcontractor and had hired subcontractors. But while the CGL policy in *Custom Agri* may have included PCOH and subcontractor clauses, we did not address them directly and must do so here.

{¶ 20} The CGL policy in this case states the following regarding general liability:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

SECTION I—COVERAGES

COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

a. *We will pay those sums that the insured becomes legally obligated to pay as damages because of* "bodily injury" or *"property damage"* to which this insurance applies. *We will have*

*the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence"* and settle any claim or "suit" that may result. But:

　　　 \* \* \*

　　　 b.　　 *This insurance applies to "bodily injury"* and *"property damage" only if*:

　　　 (1)　　 *The* "bodily injury" or *"property damage" is caused by an "occurrence"* that takes place in the "coverage territory \* \* \*."

(Capitalization sic and emphasis added.)

{¶ 21} In "Section V—Definitions," the CGL policy defines "occurrence" and "property damage" as follows:

　　　 16.　　 "Occurrence" means:

　　　 a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions.

　　　 \* \* \*

　　　 20.　　 "Property damage" means:

　　　 a.　　 Physical injury to or destruction of tangible property including all resulting loss of use. All such loss of use shall be deemed to occur at the time of the physical injury or destruction that caused it; or

> b. *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

(Emphasis added.)

{¶ 22} By its terms, the CGL policy emphasizes that only "an occurrence" can trigger coverage for property damage. It states that CIC agrees to "pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'property damage' to which this insurance applies." But the damage must be due to an "occurrence," which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." There is no question that the damage to the inn was "property damage" that was discovered after work was completed. But without an "occurrence" as defined in the CGL policy, there is no coverage for any property damage.

{¶ 23} Nevertheless, the appellees argue, and the court below held, that the CGL policy's subcontractor-specific terms and the PCOH clause show that the parties intended for the policy to cover the damages here. Those provisions state the following:

> SECTION I—COVERAGES
> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> * * *
> 2. Exclusions:
> This insurance does not apply to:
> * * *
> j. Damage to Property
> "Property damage" to:

* * *

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**{¶ 24}** In "Section V—Definitions," the CGL policy defines "products-completed operations hazard" as follows:

19.     "Products-completed operations hazard":

a.      Includes * * * "property damage" occurring away from premises you own or rent and arising out of * * * "your work" except:

* * *

(2)     Work that has not yet been completed or abandoned.

**{¶ 25}** The CGL policy then lists the instances in which "your work" is deemed completed.  The parties do not dispute that work on the inn was completed by the time that the water-related damage was discovered.  Still, the CGL policy's definition of "your work" must be considered:

29.     "Your work":

a.      Means:

(1)     Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance, or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

**{¶ 26}** Finally, the CGL policy provides the following *exclusion* for "property damage" to "your work," which includes an *exception to the exclusion* when a subcontractor performs the work:

2. Exclusions

This insurance does not apply to:

* * *

l. Damage to Your Work:

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

***Under the CGL policy's plain language, property damage caused by a subcontractor's faulty work does not meet the definition of an "occurrence" because faulty work is not fortuitous***

**{¶ 27}** Again, we concluded in *Custom Agri* that "claims for faulty workmanship, such as the one in the present case, are not fortuitous in the context

of a CGL policy." *Custom Agri*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, at ¶ 14. We made that determination because these claims "are not claims for 'property damage' caused by an 'occurrence' under a [CGL] policy" because faulty work is not fortuitous. *Id.* at ¶ 19. Here, we similarly hold that a subcontractor's faulty work does not meet the definition of an "occurrence" because it is not based in fortuity.

{¶ 28} The language within the Coverage A portion of the CGL policy is critical to the policy's overall effect. It states that CIC agrees to pay for property damage under certain circumstances. But the damage must be due to an "occurrence," which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Again, there is no question that the water-related damage to the inn was "property damage" and was discovered after work had been completed. But unless there was an "occurrence," the PCOH and subcontractor language has no effect, despite the fact that Charles Construction had paid additional money for it.

{¶ 29} If the subcontractors' faulty work were fortuitous, the PCOH and subcontractor-specific terms would require coverage. But as we explained in *Custom Agri*, CGL policies are not intended to protect owners from ordinary "business risks" that are normal, frequent or predictable consequences of doing business that the insured can manage. *Custom Agri* at ¶ 10. Here, we cannot say that the subcontractors' faulty work was fortuitous.

{¶ 30} Charles Construction, ONU, and their amici curiae assert that parties to a construction contract understand that contractors buy coverage for defects discovered after completion through the PCOH clause and that CGL policies and PCOH clauses have changed over time to assure that subcontractor work is covered. In support, they note that over the past several years, courts have agreed with their arguments.

**{¶ 31}** We acknowledge that our reasoning in this case contrasts with recent decisions of other courts. *See, e.g.*, *Black & Veatch Corp. v. Aspen Ins. (UK), Ltd.*, 882 F.3d 952, 965-966 (10th Cir.2018) (analyzing history of CGL policies and holding that definition of "occurrence" encompasses damage to the insured's own work arising from faulty subcontractor workmanship); *Natl. Sur. Corp. v. Westlake Invests., L.L.C.*, 880 N.W.2d 724, 740 (Iowa 2016) ("[W]e interpret the insuring agreement in the modern standard-form CGL policy as providing coverage for property damage arising out of defective work performed by an insured's subcontractor unless the resulting property damage is specifically precluded from coverage by an exclusion or endorsement"); *Cypress Point Condominium Assn. v. Adria Towers, L.L.C.*, 226 N.J. 403, 428-429, 143 A.3d 273 (2016) ("[B]ecause the result of the subcontractors' faulty workmanship here—consequential water damage to the completed and nondefective portions of Cypress Point—was an 'accident,' it is an 'occurrence' under the policies and is therefore covered so long as the other parameters set by the policies are met"); French, *Revisiting Construction Defects as "Occurrences" Under CGL Insurance Policies*, 19 U.Pa.J.Bus.L. 101, 122-123 (2016) ("In the past five years * * * there has been near unanimity by the courts that have addressed the issue. They have held that construction defects can constitute occurrences and contractors have coverage under CGL policies at least for the unexpected property damage caused by defective workmanship done by subcontractors"). But the language requiring that "property damage" be caused by an "occurrence" remains a constant in the policies. And under our precedent, faulty workmanship is not an occurrence as defined in CGL polices like the one before us.

**{¶ 32}** Regardless of any trend in the law, we must look to the plain and ordinary meaning of the language used in the CGL policy before us. *See Alexander v. Buckeye Pipeline*, 53 Ohio St.2d 241, 245-246, 374 N.E.2d 146 (1978). When

the language of a written contract is clear, we may look no further than the writing itself to find the intent of the parties. *Id.* at paragraph two of the syllabus.

**{¶ 33}** In deciding *Custom Agri*, we adopted the Arkansas Supreme Court's reasoning in *Essex Ins. Co. v. Holder*, 372 Ark. 535, 261 S.W.3d 456 (2008). In *Essex*, a homebuilder demanded that his insurance provider defend him under his CGL policy after the homeowners sued him during the construction of their house for damages caused in part by his use of incompetent subcontractors. *Id.* at 457. The Arkansas court concluded that the insurance provider had no such duty because "[f]aulty workmanship is not an accident; instead it is a foreseeable occurrence." *Id.* at 460. The court relied, in part, on a federal district court decision that had applied the Arkansas court's definition of "accident": "[T]he contractor's obligation to repair or replace its subcontractor's defective workmanship could not be deemed unexpected on the part of the contractor, and therefore, failed to constitute an 'event' for which coverage existed under the policy." *Id.* at 459, citing *Nabholz Constr. Corp. v. St. Paul Fire & Marine Ins. Co.*, 354 F.Supp.2d 917, 923 (E.D.Ark.2005).

**{¶ 34}** After that decision, the Arkansas legislature enacted Ark.Code Ann. 23-79-155(a)(2), which states that a CGL policy offered for sale in Arkansas shall define "occurrence" to include "[p]roperty damage * * * resulting from faulty workmanship." If it were so inclined, the Ohio General Assembly could take similar action in response to our opinion today.

## CONCLUSION

**{¶ 35}** We hold that property damage caused by a subcontractor's faulty work is not fortuitous and does meet the definition of an "occurrence" under a CGL policy. CIC was not required to defend Charles Construction against ONU's lawsuit or indemnify Charles Construction against any damages. We reverse the judgment of the court of appeals and reinstate the judgment of the trial court.

Judgment reversed.

O'DONNELL, FISCHER, DEWINE, and DEGENARO, JJ., concur.

O'CONNOR, C.J., and KENNEDY, J., concur in judgment only.

_____

Collins, Roche, Utley & Garner, L.L.C., Richard M. Garner, and David W. Orlandini, for appellant.

White, Getgey & Meyer Co., L.P.A., David P. Kamp, Jean Geoppinger McCoy, and Carl J. Stich Jr., for appellee Charles Construction Services, Inc.

Vorys, Sater, Seymour & Pease, L.L.P., Allen L. Rutz, and Mitchell A. Tobias; and Eastman & Smith, Ltd., and Thomas P. Kemp, for appellee Ohio Northern University.

Cavitch, Familo & Durkin Co., L.P.A., and Gregory E. O'Brien, urging reversal for amicus curiae Counsel for Ohio Insurance Institute.

Kristen L. Sours, urging affirmance for amici curiae Ohio Home Builders Association and National Association of Home Builders.

Brouse McDowell, Amanda M. Leffler, P. Wesley Lambert, Lucas M. Blower, Alexandra V. Dattilo, and Christopher T. Teodosio, urging affirmance for amici curiae Associated Builders and Contractors, Inc.; Associated Builders and Contractors, Inc., Central Ohio Chapter; Associated Builders and Contractors, Inc., Ohio Valley Chapter; and Associated Builders and Contractors, Inc., Northern Ohio Chapter.

Thompson Hine, L.L.P., Terry W. Posey Jr., and Daniel M. Haymond, urging affirmance for amici curiae Associated General Contractors of Ohio, Ohio Contractors Association, and American Subcontractors Association.

_____