**MILLER et al., Appellants,**

v.

**MOTORIST MUTUAL INSURANCE COMPANY et al., Appellees.**

[Cite as *Miller v. Motorists Mut. Ins. Co.*, 196 Ohio App.3d 753, 2011-Ohio-6099.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2011–P–0016.

Decided Nov. 28, 2011.

Rutter & Russin and Robert P. Rutter, for appellants.

Day Ketterer, Ltd., and Merle D. Evans III, for appellees.

MARY JANE TRAPP, Judge.

{¶ 1} Appellants, Theresa Miller and Geoffrey Davis, appeal from a decision of the Court of Common Pleas of Portage County, granting summary judgment in favor of appellee, Motorist Mutual Insurance Company ("MMIC"), and denying appellants' motion for summary judgment. While the parties stipulate to the facts in this case and to the liability of the tortfeasor, they disagree over whether the multiple collisions giving rise to this case constituted one accident for the purposes of insurance liability limits, or two. Given the failure of the insurance company to include a more precise definition of the policy term "accident" and to use limiting language found in other policies that have withstood judicial scrutiny, we find that the incidents giving rise to Miller's and Davis's claims constitute two accidents.

{¶ 2} **Substantive Facts and Procedural History**

{¶ 3} The facts in this case are undisputed. On the evening of July 12, 2008, Daniel Masterson was heading west on State Route 5, when he took his eyes off

the road in order to reach to the floorboard to retrieve his lighter and veered into the eastbound lane of traffic. The SUV that Masterson was driving collided with a group of motorcycles headed east. Masterson first collided with a motorcycle driven by David Perrine. In an attempt to avoid hitting Perrine's motorcycle, Michael Reese, who was driving behind Perrine, took evasive action but was unable to avoid hitting Perrine's motorcycle and sliding into his path. Perrine and his passenger, Julia Hill, and Reese and his passenger, Kim Mook, sustained injuries.

{¶ 4} Within 0.3 seconds of striking Perrine, Masterson struck a motorcycle driven by Geoffrey Davis, and then traveled back across the westbound lane before crashing into a guardrail. Davis and his passenger, Theresa Miller, were also injured.

{¶ 5} Masterson was insured by MMIC, and his policy contained liability coverage for bodily injury with split limits of $100,000 for "each person" and $300,000 for "each accident." No dispute exists as to Masterson's liability, nor is there a dispute that the collective value of the injuries sustained by Perrine, Hill, Reese, Mook, Davis, and Miller exceeded $300,000.

{¶ 6} A dispute does exist, however, as to whether the incidents constitute one accident, limiting MMIC's liability to a single $300,000–per–accident payment or whether they constitute two accidents, increasing MMIC's exposure in this case to, at most, $500,000. Miller and Davis contend that Masterson's collision with their motorcycle constitutes a separate accident from the initial collision with Perrine's motorcycle and that they are entitled to a separate $300,000–per–accident payment.

{¶ 7} Because MMIC's liability for at least one accident was not disputed, the parties entered into a covenant not to execute, which provided that MMIC would make one "each accident" payment of $300,000 to be split among the six injured parties, but provided for the ability to file a declaratory-judgment action seeking interpretation of MMIC's policy, and determination of whether the incidents constituted one or two accidents. The covenant not to execute further provided that should a court determine the incident to be two accidents, MMIC would pay an additional $100,000 each to Miller and Davis.

{¶ 8} Miller and Davis ultimately filed a declaratory-judgment action, and the parties submitted cross-motions for summary judgment and declaratory relief. The trial court granted summary judgment in favor of MMIC, finding, "The whole incident was one brief continuous course of conduct." The trial court relied on language in the "Limitation of Liability" portion of the policy to determine that "the term 'accident' or 'any one auto accident' includes all the vehicles involved in the collision." Applying the policy language to its finding that there was one continuous course of conduct, the trial court held that there was only one

accident and that the parties were "therefore limited to a single recovery under the 'Each Accident' portion of [MMIC's] policy, regardless of the number of motorcycles involved in the incident."

{¶ 9} Miller and Davis timely appealed and now bring the following assignment of error:

{¶ 10} "The trial court erred in ignoring this Court's decision in *Godwin* and in granting MMIC's motion for summary judgment and denying the plaintiffs' motion for summary judgment."

{¶ 11} **Standard of Review**

{¶ 12} We review de novo a trial court's order granting summary judgment. *Hapgood v. Conrad*, 11th Dist. No. 2000–T–0058, 2002-Ohio-3363, 2002 WL 1400583, ¶ 13, citing *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 715 N.E.2d 1179. "A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." Id., citing *Parenti v. Goodyear Tire & Rubber Co.* (1990), 66 Ohio App.3d 826, 829, 586 N.E.2d 1121.

{¶ 13} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [(1996), 75 Ohio St.3d 280, 662 N.E.2d 264], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112 [526 N.E.2d 798]." *Welch v. Ziccarelli*, 11th Dist. No. 2006–L–229, 2007-Ohio-4374, 2007 WL 2410102, ¶ 40.

{¶ 14} **Interpretation of MMIC's Policy**

{¶ 15} The controlling portion of MMIC's policy provides:

{¶ 16} "A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

{¶ 17} "1. Insureds;

{¶ 18} "2. Claims made;

{¶ 19} "3. Vehicles or premiums show in the Declarations; or

{¶ 20} "4. Vehicles involved in the auto accident."

{¶ 21} The policy, however, fails to define "accident." Construction of written contracts, including insurance contracts, is a matter of law. *Time Warner Entertainment Co., L.P. v. Kleese–Beshara–Kleese,* 11th Dist. No. 2009–T–0010, 2009-Ohio-6712, 2009 WL 4896222, ¶ 27, citing *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph one of the syllabus. "We review the interpretation of contracts de novo. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684. We must give the language of an insurance policy its plain and ordinary meaning. *Dairyland Ins. Co. v. Finch* (1987), 32 Ohio St.3d 360, 362, 513 N.E.2d 1324. We cannot create ambiguity where there is none; a policy must be resolved in favor of the insured only when a provision in a policy is ambiguous and susceptible to more than one reasonable interpretation. *Hacker v. Dickman* (1996), 75 Ohio St.3d 118, 119, 661 N.E.2d 1005." *OSI Sealants, Inc. v. Wausau Underwriters Ins. Co.,* 11th Dist. No. 2003–L–181, 2005-Ohio-2528, 2005 WL 1208121, ¶ 19. Because language in insurance policies is selected by the insurers, and they have ample opportunity to specifically define terms and protect themselves from liability, any ambiguity will be construed in favor of the insured. See *Gomolka v. State Auto. Mut. Ins. Co.* (1982), 70 Ohio St.2d 166, 169, 436 N.E.2d 1347.

{¶ 22} The question before the trial court and this court is whether the policy term "accident" is ambiguous. MMIC invites us, despite having failed to provide a definition for "accident," to construe the term as the courts did in *Banner v. Raisin Valley, Inc.* (N.D.Ohio 1998), 31 F.Supp.2d 591, and *Progressive Preferred Ins. Co. v. Derby* (June 15, 2001), 6th Dist. No. F–01–002, 2001 WL 672177, and adhere to a "causation approach."

{¶ 23} The "causation approach" to policy interpretation focuses on the cause of the insured event, not the effects. See *Banner* at 593. However, "both the decisions in *Banner* and in *Derby,* while citing to the causation view in determining that one accident or occurrence had resulted in multiple injuries, were

fundamentally based on construction of the term 'accident' in the subject liability policies. And, the definition of accident in each policy demanded those courts find that one accident or occurrence had resulted in multiple injuries." *Nationwide Mut. Ins. Co. v. Godwin*, 11th Dist. No. 2005–L–183, 2006-Ohio-4167, 2006 WL 2337199, ¶ 48.

{¶ 24} In both *Banner* and *Derby*, the limitation-of-liability clause contained the same phrase "regardless of the number of vehicles involved in the auto accident" found in MMIC's policy. This is the limiting language relied upon by the trial court below. In an attempt to distinguish this case from *Godwin*, the trial court surmises that the *Godwin* court "apparently had insufficient policy language to help define the terms 'accident' or 'occurrence,' " because the *Godwin* decision does not refer to such limiting language in its opinion.

{¶ 25} But the real distinction lies in an omission in the MMIC policy, and it is this distinctive omission that controls the outcome of the case before us.

{¶ 26} While the *Godwin* decision only alludes to the policy language that controlled the outcome in *Banner* and *Derby*, we definitively find that the interpretation reached in *Banner* and *Derby* was dictated by the inclusion of a standard policy definition of the term "accident" as "a sudden, unexpected and unintended event, or a continuous or repeated exposure to substantially the same conditions." Unlike *Banner* and *Derby*, the MMIC policy contains no such standard policy language. MMIC chose the less descriptive and thus less limiting definitional language, and thus we have no alternative but to construe the ambiguity against the insurance company.

{¶ 27} Furthermore, MMIC suggests that the liability provisions, when considered as a whole, are clear and unambiguous as to the meaning of "accident." We however, look to the plain meaning of the word. The plain and ordinary meaning of "accident" is "an unexpected and undesirable event." Websters II New College Dictionary (1999) 6. "A person unversed in the technicalities of insurance law might, therefore, easily conclude that [the insureds striking of each of the vehicles], sequentially, constituted separate accidents or occurrences, rather than the single accident or occurrence of losing control of the [car] * * *." *Godwin* at ¶ 49.

{¶ 28} We may arrive at this same conclusion from a causation analysis as well. In considering the cause of Perrine's, Hill's, Reese's, and Mook's injuries as compared to the cause of Miller's and Davis's injuries, they appear decidedly different. The injuries to the former group are as a direct result of Masterson's collision with Perrine's motorcycle. Miller's and Davis's injuries, however, do not stem from that collision; instead, they are a direct result of an independent collision between Masterson's vehicle and their own motorcycle.

{¶ 29} The trial court reasoned that "there is no legal or practical difference between a succession of collisions caused by a single vehicle striking one vehicle ahead of it—which strikes the next vehicle ahead, and where a single vehicle strikes multiple vehicles in succession. The *same active continuous force* is causing damage to multiple vehicles * * *." (Emphasis added.) The trial court then concluded that MMIC's policy "clearly applies to both types of accidents and the results should be the same."

{¶ 30} We would agree with the trial court had MMIC included the phrase "continuous or repeated exposure to substantially the same conditions" in its policy, but it did not. Thus, as a matter of contract interpretation, the results *cannot* be the same.

{¶ 31} MMICs liability policy specifically accounts for and limits its liability in an event such as the first collision, a chain reaction if you will, whereby the same automobile strike causes injuries to multiple parties and vehicles. The policy, however, does not specifically contemplate and limit MMICs liability in a sequence of events as presented in this case, where two separate and distinct automobile strikes cause injury to multiple parties. MMIC had the opportunity to define "accident" and construct its policy in a way that limited its liability in a situation such as the one before us. It chose not to do so, and thus we must construe the ambiguity in favor of Miller and Davis.

{¶ 32} The assignment of error is meritorious, and the judgment of the Court of Common Pleas of Portage County is reversed.

Judgment reversed.

RICE and WRIGHT, JJ., concur.