[Cite as *Sarrough v. Budzar*, 2015-Ohio-3674.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 102422**

---

## MAY SARROUGH, ADMINISTRATOR OF THE ESTATE OF HANAN SAAH, DECEASED

PLAINTIFF-APPELLEE

vs.

## JOEL BUDZAR, ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-784034

**BEFORE:** E.A. Gallagher, J., Celebrezze, A.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 10, 2015

**ATTORNEYS FOR APPELLANT**

Donald G. Drinko
Jay Clinton Rice
Gallagher Sharp
Sixth Floor Buckley Building
1501 Euclid Avenue
Cleveland, Ohio 44115

**ATTORNEYS FOR APPELLEE**

W. Craig Bashein
Bashein & Bashein Co., L.P.A.
35th Floor Terminal Tower
50 Public Square
Cleveland, Ohio 44113

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

EILEEN A. GALLAGHER, J.:

{¶1} In this insurance coverage dispute, defendant-appellant Peerless Indemnity Insurance Company ("Peerless") appeals from the decision of the Cuyahoga County Court of Common Pleas granting the summary judgment motion of plaintiff-appellee May Sarrough, administrator of the estate of Hanan Saah ("Sarrough"), and denying Peerless's cross-motion for summary judgment on Sarrough's claim for breach of contract. Sarrough alleged that Peerless had breached its insurance contract with decedent Hanan Saah ("Saah") by failing to pay underinsured motorist ("UIM") benefits due under an automobile insurance policy Peerless had issued to Saah (the "policy") following her involvement in a series of motor vehicle accidents.

{¶2} The parties disagree as to whether the sequence of events giving rise to Sarrough's claim constituted one "accident" or two "accidents" for purposes of determining Peerless' liability limits for UIM coverage under the policy. Peerless asserts that the trial court erred in interpreting the policy as providing a $600,000 limit (less setoff) for UIM coverage for two "accidents" and thereafter determining, as a matter of law, that Peerless must tender its policy limits (less setoff). Peerless contends that there was only one impact and thus "one accident" under the policy and that genuine issues of material fact remain for trial regarding comparative negligence, proximate cause and the damages resulting from each "accident." For the reasons that follow, we affirm in part and reverse in part the trial court's judgment.

**Procedural and Factual Background**

{¶3} The material facts are undisputed. On February 20, 2011, at approximately 9:30 p.m., seventeen-year-old Brittini Meadows was driving a 2005 Chevrolet Cavalier owned by her mother, Donna Russo, eastbound on Interstate 90 toward Cleveland after picking up her boyfriend from work. Meadows testified that due to accumulations of water, snow and ice, she was traveling in the left lane of the highway at approximately 30 m.p.h. because she believed it was "[t]he clearest lane to drive in." As she approached the Rocky River-Lakewood border, Meadows testified that she could hear "water and ice hitting up against the bottom of the car, like if you were driving through a little pond or something" and that her vehicle then began to hydroplane and spin to the right. The vehicle made at least one complete turn and traveled across the width of the highway before coming to a stop in the right lane, angled toward the middle lane. Her lights remained on, but her car was "dead" and would not start or move.

{¶4} A snow plow driver stopped behind Meadows and attempted to assist her by directing traffic around her vehicle. Although several vehicles were able to avoid her vehicle, within 20-30 seconds, Meadows vehicle was struck from behind by a car owned and driven by Sarah Owings. The impact caused Meadows vehicle to cross several lanes of traffic, ending up in the left lane of the highway. A Dodge Durango, driven by Benitza Montgomery and owned by Mark Montgomery, then stuck Meadows vehicle a second time. The impact pushed Meadows vehicle to the right, into the right berm.

{¶5} At around this same time, Saah was driving a Chevrolet Impala eastbound on Interstate 90 in the right lane. Her son, Salem Saah ("Salem"), was sitting in the front passenger seat. Salem testified that it was snowing and the road was "a little bit icy" but

that he could still see the cars in front of them. He testified that as they were proceeding down the highway, a car (i.e., Meadows vehicle) started to spin out in front of them from the left to the right, then came to a stop. Saah steered to the left and into the center lane to avoid the vehicle. As she did so, her vehicle started to slide. Saah's vehicle slid left and came to a stop, facing north toward the median, straddling the far left and center lanes. Once Saah's vehicle stopped, Salem looked around. He then looked at his mother and assured her that "everything was fine" and that they "didn't hit anything." Five to ten seconds later, a 2002 Nissan X-Terra driven by Joel Budzar, struck Saah's vehicle.

{¶6} Budzar described the weather as "horrible" with lots of snow and ice on the road. Budzar testified that he was traveling in the right lane at a speed of 35-45 mph when he saw two vehicles on the highway, both of which appeared to be disabled. The first vehicle (Meadows car) was further east and was stopped sideways to the right of the right berm near the guardrail. The second vehicle (Saah's car) was turned sideways, facing north, blocking part of the center and right lanes and appeared to be moving slowly, coming to a stop. He testified that he intended to drive between the two vehicles, hoping that Saah's vehicle would create a path for him "[b]ecause there was no way I could stop." However, Saah's vehicle did not move in time, and Budzar's vehicle struck the driver's-side door of Saah's vehicle. Saah died from the injuries she sustained in the incident. Saah was survived by her children, Salem, Samer Saah, Rana Zaboura and Rema Tadros, and her mother, Zuhdieh Kash.

**{¶7}** On May 31, 2012, Sarrough filed a complaint against Joel Budzar, Benitza Montgomery, Mark Montgomery, Sarah Owings, Brittini Meadows, Donna Russo and Peerless to recover damages for the fatal injuries Saah sustained in the February 20, 2011 incident. Salem, Samer Saah, Rana Zaboura, Rema Tadros and Zuhdieh Kash also asserted claims in the action. As to Peerless, Sarrough asserted a claim for breach of contract, alleging that Peerless had failed to pay the estate the UIM benefits to which it was entitled under Saah's automobile insurance policy with Peerless. Peerless filed an answer denying the material allegations of the complaint relating to the breach of contract claim and asserting various affirmative defenses.

**{¶8}** At the time of the incident, Meadows was insured under a policy issued by Century Insurance with $100,000/$300,000 liability limits, Budzar was insured by Peerless under a policy with $100,000/$300,000 liability limits and Saah was insured under a Peerless policy that included UIM coverage with a "single limit" of $300,000 for "[e]ach [a]ccident." Under the terms of its policy with Saah, Peerless had a right of setoff against its limit of liability for "all sums paid because of 'bodily injury' by or on behalf of persons or organizations who may be legally responsible."

**{¶9}** Settlement conferences were conducted in April and May 2013 during which the insurers for Meadows and Budzar each tendered their respective policy limits of $100,000, which were accepted subject to Peerless's approval. Peerless consented to the estate's acceptance of the $200,000 offered by Meadows and Budzar's insurers and tendered an additional $100,000, which it claimed was the balance of the $300,000 single limit UIM coverage available under Saah's policy after the setoff. All claims except the

breach of contract claim between Saah and Peerless were settled and/or dismissed following the settlement conferences.

{¶10} On November 25, 2013, Peerless filed a motion for summary judgment, asserting that, based on the undisputed material facts, Peerless had fully satisfied its obligations under the automobile insurance policy it had issued to Saah and was, therefore, entitled to judgment as a matter of law on Sarrough's breach of contract claim. Peerless argued that there was only one "accident" that resulted in "bodily injury" to Saah and that because Peerless was entitled to set off any amounts paid by other tortfeasors under the policy, i.e., the $200,000 paid by Meadows and Budzar's insurers, Peerless had satisfied its obligations under the policy when it tendered $100,000 to the estate. In support of its motion, Peerless attached a certified copy of the policy and cited to deposition testimony from the parties and witnesses involved in the incident.

{¶11} A day later, Sarrough filed her own motion for partial summary judgment, seeking a judicial declaration that two "accidents" had occurred — one involving Meadows vehicle and one involving Budzar's vehicle — and that up to $400,000 in UIM coverage ($200,000 for each of the two accidents less the $200,000 the estate received from Meadows and Budzar's insurers) was available to the estate under the policy. In support of her motion, Sarrough attached copies of the policy and the traffic crash report from the February 20, 2011 incident and cited deposition testimony from the involved parties and witnesses. Each party opposed the summary judgment motion filed by the other party and filed replies in support of their own motions. Peerless also filed a motion to strike the traffic crash report attached to Sarrough's motion for partial summary

judgment on the grounds that it was not properly authenticated, included inadmissible hearsay and did not otherwise constitute proper summary judgment evidence under Civ.R. 56(C). Sarrough did not file a separate opposition to the motion to strike but argued in her reply to her motion for partial summary judgment that "the witnesses were questioned at length about numerous aspects of these investigatory materials during their discovery depositions," that "they all confirmed the same general version of the tragic episode" and that Peerless's objections were "immaterial" because "the necessary facts and circumstances [had] been established through deposition testimony."

{¶12} On December 4, 2014, the trial granted Sarrough's motion for summary judgment and denied Peerless's motion for summary judgment. Interpreting the insurance policy, the trial court reasoned that because the term "accident" was not defined in the policy, it must "be broadly construed to refer to all types of unexpected or unintended happenings" and "must be viewed from the standpoint of the insured." The trial court held that, based on the undisputed facts, "reasonable minds can only conclude that there were at least two separate accidents": (1) the accident caused by Meadows, who forced Saah's vehicle to change lanes and spin out of control and (2) the accident caused by Budzar when his vehicle struck Saah's vehicle. The trial court observed that, under the policy, UIM coverage applies "when an insured is 'legally entitled to recover' from an uninsured or underinsured tortfeasor" and that this requirement was satisfied with respect to the "accident" involving Meadows vehicle because Meadows had settled the wrongful death and survivorship claims brought against her arising out of the accident. The trial court rejected Peerless's argument that an "impact" was required in order to constitute an

"accident" under the policy, noting that Peerless had taken the position that the $100,000 payment received from Meadows insurer had reduced its coverage obligation under the policy (notwithstanding that there was no impact between Saah's and Meadows vehicles) and that, in the property damage section of the policy, Peerless had specifically imposed an "impact" requirement for collision coverage and thus knew "how to adopt" such a requirement when it applied. As the trial court explained:

> [S]ince "accident" was not defined in the Ohio Uninsured/ Underinsured Motorist Endorsement, it is evident that the parties did not intend to exclude non-impact incidents. Since the evidence is undisputed that Hanan Saah's car was left vulnerable on the highway as a result of an unexpected and unintended happening, for which her survivors are legally entitled to recover from an underinsured motorist, then the conclusion is unavoidable that an "accident" occurred before Budzar negligently caused the second one that resulted in fatal injuries.

{¶13} Because there were two "accidents," the trial court held that Sarrough could recover up to the $300,000 limits of liability for each accident, i.e., that the total amount of underinsured motorist coverage available to Sarrough under the policy was $600,000 (subject to the $200,000 set-off). The trial court also found that "reasonable minds could only conclude that, but for the negligence of both Meadows and Budzar, Hanan Saah would not have suffered fatal injuries" and that because Sarrough was "legally entitled to recover from both underinsured motorists for each accident they caused," separate per accident limits (less the $200,00 setoff) "must be tendered" by Peerless to satisfy its obligations under the policy. The trial court held that therefore, Sarrough was "entitled to total underinsured motorist limits from Peerless in the amount of $400,000" and entered final judgment in favor of Sarrough and against Peerless.

**{¶14}** Peerless timely appealed the trial court's judgment, presenting the following five assignments of error for review:

FIRST ASSIGNMENT OF ERROR
The trial court erred in granting plaintiff's motion for summary judgment and in denying defendant Peerless Indemnity Insurance Company's motion for summary judgment.

SECOND ASSIGNMENT OF ERROR
The trial court erred in its interpretation of Peerless Indemnity Insurance Company's policy which provides a single limit of uninsured/underinsured motorists coverage of $300,000 as the "maximum limit of liability for all damages resulting from any one accident" and that "this is the most we will pay regardless of the number [of] insureds, claims made, or vehicles involved in the accident" where there was only one impact proximately causing Hanan Saah's injuries and, therefore, the court had no valid basis for holding that there were two "accidents" thereby doubling the total policy limits of uninsured/underinsured motorists coverage available to plaintiff under the policy for Hanan Saah's accident (reduced by $200,000 paid by those legally responsible).

THIRD ASSIGNMENT OF ERROR
The trial court erred in granting plaintiff's motion for summary judgment where plaintiff moved only for partial summary judgment.

FOURTH ASSIGNMENT OF ERROR
The trial court erred in holding as a matter of law that Peerless must tender in separate "per accidents" limits for two accidents and that "plaintiff is entitled to total underinsured motorist limits from Peerless in the amount of $400,000" without a trial by jury to determine the comparative negligence of Hanan Saah and the alleged tortfeasors, which "accident" was the proximate cause of plaintiff's damages, and the amount of those damages suffered in each accident, in violation of Peerless Indemnity's constitutional rights.

FIFTH ASSIGNMENT OF ERROR
The trial court erred in declining to rule on Peerless Indemnity Insurance Company's "motion to strike" thereby effectively denying Peerless'[s] objection to the admissibility into evidence of an unauthenticated traffic report and its hearsay contents.

Peerless's first and second assignments of error and third and fourth assignments of error are interrelated and will be addressed together.

**Law and Analysis**

### Standard of Review

{¶15} An appeal of a trial court's summary judgment ruling is subject to a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.,* 121 Ohio App.3d 188, 192, 699 N.E.2d 534 (8th Dist.1997). We accord no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

{¶16} Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue exists as to any material fact, (2) the party moving for summary judgment is entitled to judgment as a matter of law and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is adverse to the nonmoving party.

{¶17} The moving party carries an initial burden of informing the court of the basis for the motion and identifying those portions of the record that set forth specific facts that demonstrate its entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the moving party fails to meet this burden, summary judgment is not appropriate; if the moving party meets this burden, summary judgment is appropriate only if the nonmoving party fails to meet its reciprocal

burden, setting forth specific facts establishing that a genuine issue exists for trial.  *Id.* at 293.

**Interpretation of the Insurance Policy**

{¶18} Peerless's first two assignments of error turn on the interpretation of the insurance policy.  The Peerless policy issued to Saah included UIM coverage with a "single limit" of $300,000 for "[e]ach [a]ccident."  The terms of Saah's UIM coverage are detailed in the "UNINSURED MOTORISTS COVERAGE — Ohio" endorsement to the policy, which provides, in relevant part:

**INSURING AGREEMENT**

A.   We [Peerless] will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of:

   1.   An "uninsured motor vehicle" as defined in Sections 1., 2. and 4. of the definition of an "uninsured motor vehicle" because of "bodily injury":

      a.   Sustained by an "insured"; and

      b.   Caused by an accident.

* * *

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."   We will pay under this coverage only if 1. or 2. below applies:

   1.   The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by the payment of judgments or settlements * * *

C.   "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

* * *

> 2. To which a body injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is * * * [l]ess than the limit of liability for this coverage[.]
>
> * * *
>
> **LIMIT OF LIABILITY**
>
> A. The Limit of Liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
>
> 1. "Insureds";
>
> 2. Claims made;
>
> 3. Vehicles or premiums shown in the Declarations; or
>
> 4. Vehicles involved in the accident.
>
> B. With respect to coverage under Section 2. of the definition of "uninsured motor vehicle," the limit of liability shall be reduced by all sums paid because of "bodily injury" by or on behalf of persons or organizations who may be legally responsible. * * *

The term "accident" is not defined in the policy.

{¶19} "'An insurance policy is a contract whose interpretation is a matter of law'" and is reviewed on a de novo basis. *Sauer v. Crews*, 140 Ohio St.3d 314, 2014-Ohio-3655, 18 N.E.3d 410, ¶ 10, quoting *Sharonville v. Am. Emp. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6; *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, 948 N.E.2d 931, ¶ 12, citing *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm*, 73 Ohio St.3d 107, 108, 652 N.E.2d 684 (1995).

**{¶20}** As the Ohio Supreme Court has instructed, when interpreting an insurance policy:

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Servs., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273, 714 N.E.2d 898 (1999), citing *Employers' Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343, 124 N.E. 223, syllabus (1919); *see also* Section 28, Article II, Ohio Constitution. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus (1987). We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus (1978).

*Westfield Ins. Co. v. Custom Agri Sys.*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, ¶ 8, quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11.

**{¶21}** "'[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined.'" *Gomolka v. State Auto. Mut. Ins. Co.*, 70 Ohio St.2d 166, 167-168, 436 N.E.2d 1347 (1982). Because, in an insurance context, the insurer customarily drafts the contract, any ambiguity in an insurance contract is interpreted against the insurer and in favor of the insured. *Galatis* at ¶ 13 ("[W]here the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party."); *Sharonville* at ¶ 6 ("If provisions are susceptible of more than one

interpretation, they 'will be construed strictly against the insurer and liberally in favor of the insured.'"), quoting *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 519 N.E.2d 1380 (1988), syllabus. However, there are limits to this rule. "[A] court cannot create ambiguity in a contract where there is none. * * * Ambiguity exists only when a provision at issue is susceptible of more than one reasonable interpretation." *Sauer* at ¶ 12, quoting *Lager v. Miller-Gonzalez*, 120 Ohio St.3d 47, 2008-Ohio-4838, 896 N.E.2d 666, ¶ 16; *see also Gomolka* at 168 ("[W]here the provisions of an insurance policy are clear and unambiguous courts may not indulge themselves in enlarging the contract by implication in order to embrace an object distinct from that contemplated by the parties, * * * nor read into the contract a meaning not placed there by an act of the parties, * * * nor make a new contract for the parties where their unequivocal acts demonstrate an intention to the contrary * * *[.]"). A term is not necessarily ambiguous simply because it is not defined in the insurance contract. *State ex rel. Petro v. R.J. Reynolds Tobacco Co.*, 104 Ohio St.3d 559, 2004-Ohio-7102, 820 N.E.2d 910, ¶ 23; *Guman Bros. Farm*, 73 Ohio St.3d at 108, 652 N.E.2d 684.

{¶22} Sarrough asserts that "[b]ased on the undisputed facts," there were "at least two separate accidents on February 20, 2011" that caused Saah's fatal injuries — one involving Meadows vehicle and one involving Budzar's vehicle. Peerless disagrees. Peerless argues that because Saah's vehicle was involved in only one "impact," there was only one "accident" "regardless of the number of negligent motorists on the highway during the evening of February 20, 2011, whose negligence may have contributed to this accident." In other words, because there was no "impact" with Saah's vehicle as a result

of the events involving Meadows vehicle, Peerless maintains that the events involving Meadows vehicle could not be deemed a separate "accident" under the policy. Peerless further contends that such a conclusion "affords * * * 'accident' its 'natural' and commonly accepted meaning" and is the only reasonable interpretation of the policy language that states that Peerless's $300,000 "limit of liability" is "our maximum limit of liability for all damages resulting from any one accident" and "the most we will pay regardless of the number of * * * '[i]nsureds'; * * * [c]laims made; * * * or * * * [v]ehicles involved in the accident." We disagree.

{¶23} Applying the principles of construction set forth above, considering both (1) the plain and ordinary meaning of "accident" and (2) Peerless's failure to include a more precise definition of the term in its policy, we conclude that the trial court properly determined that the series of events involving Meadows vehicle and the separate impact with Budzar's vehicle constituted two "accidents" within the meaning of the policy.

{¶24} The parties agree that the plain and ordinary meaning of "accident" is "'an unexpected and undesirable event,'" *Miller v. Motorists Mut. Ins. Co.,* 196 Ohio App.3d 753, 2011-Ohio-6099, 965 N.E.2d 369, ¶ 27, (11th Dist.) quoting *Webster's II New College Dictionary* 6 (1999),

> "'an event proceeding from an unexpected happening or unknown cause without design and not in the usual course of things; an event that takes place without one's expectation; an undesigned, sudden and unexpected event; an event which proceeds from an unknown cause or is an unusual effect of a known cause and, therefore, unexpected,'"

*Westfield Ins. Co. v. Our 3 Sons, Inc.*, 8th Dist. Cuyahoga No. 87452, 2006-Ohio-3688, ¶ 28, quoting *Am. State Ins. Co. v. Guillermin*, 108 Ohio App.3d 547, 556, 671 N.E.2d 317

(2d Dist.1996); *see also Custom Agri Sys.*, 133 Ohio St.3d 476, 2012-Ohio-4712, 979 N.E.2d 269, at ¶ 13 (noting that "accidental" has been defined as "'unexpected, as well as unintended'"), quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.,* 64 Ohio St.3d 657, 666, 597 N.E.2d 1096 (1992).

**{¶25}** Applying this definition to the facts of here, one might reasonably interpret "accident" as Peerless does, i.e., to conclude that the nearly continuous sequence of events that allegedly combined to cause Saah's fatal injuries constituted a single "accident" or "unexpected happening." However, one might also reasonably conclude (1) that the series of events involving Meadows vehicle (including the sudden, the evasive actions that Saah was forced to undertake to avoid a collision with Meadows vehicle and the vulnerable position in which Saah's vehicle came to a rest after avoiding that collision) constituted one "accident" or "unexpected happening" and (2) that the collision of Budzar's vehicle with Saah's vehicle constituted a second "accident" or "unexpected happening." An "impact" is not required for an incident to constitute an unexpected event or happening. It is undisputed that the events involving Meadows vehicle occurred before Budzar struck Saah's vehicle (i.e., that the events were sequential, not concurrent), that the events involved two different alleged tortfeasors engaging in separate, independent conduct (i.e., one alleged tortfeasor's conduct was not impacted by or attributable to the other) and that both Saah's vehicle and Meadows vehicle came to rest before Budzar's vehicle struck Saah's vehicle, i.e., the events were not part of a single "chain reaction." As Salem Saah testified, he thought the incident was over once Meadows vehicle came to rest on the right berm and Saah successfully avoided hitting

Meadows vehicle. Because either of these two interpretations are reasonable interpretations of the ambiguous, undefined language Peerless chose to include in the policy, we must construe the ambiguity against Peerless.

{¶26} In *Miller, supra*, the Eleventh District reached a similar conclusion when interpreting similar policy language. In *Miller,* an SUV driven by Daniel Masterson collided with a motorcycle driven by David Perine. *Miller,*196 Ohio App.3d 753, 2011-Ohio-6099, 965 N.E.2d 369, at ¶ 3. A second driver, Michael Reese, who had been following Perine's motorcycle, tried to take evasive action to avoid Perine's motorcycle after it was struck by Masterson's vehicle but was unsuccessful and also struck Perine's motorcycle. *Id.* Within 0.3 seconds of striking Perine, Masterson collided with a second motorcycle driven by Geoffrey Davis. *Id.* at ¶ 4. Davis, Perine, Reese and their respective passengers were injured in the incident. *Id.* at ¶ 3-4.

{¶27} Masterson was insured under a policy that provided liability coverage for bodily injury with limits of $100,000 for each person and $300,000 for each accident. *Id.* at ¶ 5. The policy contained a "limit of liability" provision, which stated that "our maximum limit of liability for all damages resulting from any one accident * * * is the most we will pay regardless of the number of * * * "[i]nsureds"; * * * [c]laims made; * * * or * * * [v]ehicles involved in the accident." The term "accident" was undefined. *Id.* at ¶ 15-20. The parties disagreed whether the incident involved one "accident" or two "accidents," i.e., whether Masterson's collision with Davis's motorcycle constituted a separate "accident" subject to separate per accident limits under Masterson's insurance

policy. *Id.* at ¶ 6. Davis and his passenger filed a declaratory judgment action, and the parties filed cross-motions for summary judgment on the issue. *Id.* at ¶ 8.

{¶28} The trial court granted summary judgment in favor of the insurer finding that the incident was "one continuous course of conduct" and, therefore, one "accident" under the policy. *Id.* Davis and his passenger appealed, and the Eleventh District reversed. *Id.* at ¶ 9, 32.

{¶29} Giving the term "accident" its plain and ordinary meaning, the Eleventh District held that a "[a] person unversed in the technicalities of insurance law might * * * easily conclude that [the insured's striking of each of the vehicles], sequentially, constituted separate accidents or occurrences, rather than the single accident or occurrence of losing control of the [car] * * *." *Id.* at ¶ 27, quoting *Nationwide Mut. Ins. Co. v. Godwin*, 11th Dist. Lake No. 2005-L-183, 2006-Ohio-4167, ¶ 49. The court held that although the policy

> specifically accounts for and limits [the insurer's] liability in an event such as the first collision, a chain reaction if you will, whereby the same automobile strike causes injuries to multiple parties and vehicles[,] [t]he policy does not specifically contemplate and limit [the insurer's] liability in a sequence of events as presented in this case, where two separate and distinct automobile strikes cause injury to multiple parties.

*Miller* at ¶ 31. The court observed that the insurer "had the opportunity to define accident and construct its policy in a way which limited its liability in a situation such as the one before us" but that because "[i]t chose not to do so," the appellate court "must construe the ambiguity in favor of [Davis and his passenger]." *Id.* at ¶ 31. Accordingly, the court concluded that the series of collisions involving Masterson's constituted two

"accidents" under the policy. *Id.* at ¶ 1; *see also Godwin*, 2006-Ohio-4167, at ¶ 49, 51 (where insurer failed to define term "accident" or "occurrence" in insurance policy, policy was determined to be ambiguous and was construed against the insurer such that an incident with sequential impacts involving two different victims was deemed to encompass two separate "accidents" or "occurrences" for purpose of policy's liability limits clause). A similar conclusion is warranted here.[1] Peerless's attempt to distinguish these cases on the ground that they involved "two separate impacts" is not persuasive for the reasons explained above.

{¶30} Peerless further argues that even if the events involving Meadows vehicle could be considered an "accident" that caused Saah's injuries (notwithstanding there was no "impact"), the court should still find that there was only one "accident" under the policy because Saah's injuries were the result of a single cause — "treacherous road conditions" — that caused both Meadows and Budzar to lose control of their vehicles. In support of its argument, Peerless points out that several Ohio courts, including this court, have applied a "causation approach" in determining the number of accidents that have occurred for purposes of liability coverage. *See, e.g., Dutch Maid Logistics, Inc. v. Acuity,* 8th Dist. Cuyahoga Nos. 91932 and 92002, 2009-Ohio-1783; *Greater Cincinnati*

---

[1]The court indicated that it could reach the same conclusion by applying a causation analysis. *See* discussion *infra* at ¶ 30, stating that in comparing the cause of the injuries to Perine, Reese and their respective passengers with the cause of the injuries to Davis and his passenger, "they appear decidedly different." *Miller* at ¶ 28. The court explained: "The injuries to the former group are as a direct result of Mr. Masterson's collision with Mr. Perine's motorcycle. [The injuries to Davis and his passenger], however, do not stem from that collision; instead, they are a direct result of an independent collision between Mr. Masterson's vehicle and their own motorcycle." *Id.*

*Chamber of Commerce v. Ghanbar,* 157 Ohio App.3d 233, 2004-Ohio-2724, 810 N.E.2d 455, ¶ 11 (1st Dist.); *Progressive Preferred Ins. Co. v. Derby,* 6th Dist. Fulton No. F-01-002, 2001 Ohio App. LEXIS 2649 (June 15, 2001). Under the causation approach, the terms "accident" or "occurrence" as used in an insurance policy are construed "by determining whether there is but one proximate cause for a series of injuries." *Godwin* at ¶ 31, citing *Derby* at *8-9. "If the injuries are the result of continuous or repeated exposure to the same conditions, then only one accident has occurred." *Greater Cincinnati Chamber of Commerce v. Ghanbar,* 157 Ohio App.3d 233, 2004-Ohio-2724, 810 N.E.2d 455, ¶ 11 (1st Dist.), citing *Banner v. Raisin Valley, Inc.*, 31 F.Supp.2d 591, 593 (N.D.Ohio 1998); *Miller* at ¶ 23 "The 'causation approach' to policy interpretation focuses on the cause of the insured event, not the effects."); *see also Manor Care, Inc. v. First Specialty Ins. Corp.*, N.D. Ohio No. 3:03CV7186, 2006 U.S. Dist. LEXIS 48249, *11-12 (July 17, 2006) (In Ohio, "'proximate cause is an integral part of any interpretation of the words accident or occurrence as used in a contract for liability insurance.' * * * '[W]here there is but one proximate, uninterrupted and continuous cause, all injuries and damages are included within the scope of that single proximate cause.' The converse is also true: Where there are multiple proximate causes, each is a separate occurrence under an insurance contract."), quoting *Derby* at *8-9.

{¶31} Peerless argues that even if Meadows negligence could be considered a proximate cause of Saah's injuries, her negligence, along with Budzar's negligence, was simply part of a "continuous chain of events caused by the treacherous road conditions," and, therefore, together comprised only a single "accident" under the policy.

{¶32} Once again, we disagree. The authorities upon which Peerless relies for its argument are readily distinguishable from this case. Each of those cases involved a single tortfeasor whose continuous tortious conduct allegedly resulted in multiple injuries to one or more victims. *See Dutch Maid Logistics, Inc. v. Acuity,* 8th Dist. Cuyahoga Nos. 91932 and 92002, 2009-Ohio-1783, ¶ 29 (where semitruck driver caused a multivehicle accident resulting in two deaths and bodily injuries to three others, court concluded that there was one "accident" for purpose of applying policy limits based on finding that "there was but one continuous accident that caused all the bodily injury claims that flowed from it" and definition of "accident" in policy that "encompass[ed] as many vehicles and injuries as caused by the same tortfeasor"); *Ghanbar* at ¶ 9-12 (actions of insured in driving drunk, "plowing through a crowd of people" at a city festival and "injur[ing] them almost simultaneously" constituted a single accident for purposes of limits of liability coverage; injuries occurred as a result of "a single, indivisible course of conduct" by the insured and were, therefore, the result of a single "sudden, unexpected and unintended occurrence" within the meaning of "accident" as defined in the policy); *Derby,* 2001 Ohio App. LEXIS 2649 (rejecting claim that two "accidents" occurred for purposes of determining applicable liability limits under employer's insurance policy for injuries to traffic control flagger that occurred when dump truck operator backed over her, then immediately shifted into forward gear and drove over her a second time, reasoning that "[a]ll of these events were in a continuous series, closely linked in both time and space" and, therefore, involved a single "accident" within meaning of insurance policy). This case, however, is not a case in which one continuous, indivisible course of

conduct by one individual is alleged to have injured the victim. Here, we arguably have the reverse, i.e., multiple alleged causes of fatal injuries to a single victim.

**{¶33}** Further, although these courts referenced the causation approach in determining that one accident or occurrence had occurred, the court's decision in each of these cases was based primarily on the definition of "accident" included in the policy at issue. In *Dutch Maid Logistics* and *Derby*, the policies at issue defined "accident" to include "a continuous or repeated exposure" to the same or substantially the same conditions. *Dutch Maid Logistics* at *21-22 (policy included provision stating that "[a]ll bodily injury * * * resulting from continuous or repeated exposure to the same conditions will be considered as resulting from one accident" and defined "accident" as including "continuous or repeated exposure to the same conditions resulting in bodily injury * * * ")*: *Derby* at *6-7 ("accident" defined, in relevant part, as "a sudden, unexpected and unintended event, or a continuous or repeated exposure to substantially the same conditions to that event that causes bodily injury * * * "). In this case, by contrast, the term "accident" was left undefined by the insurer.

**{¶34}** Further, although the policy in this case states that Peerless's "maximum limit of liability for all damages resulting from any one accident" is "the most [it] will pay regardless of the number of * * * '[i]nsureds'; * * * [c]laims made; * * * or * * * [v]ehicles involved in the accident," it is noticeably silent with regard to the number of alleged tortfeasors. *See Ross v. State Auto. Mut. Ins. Co.*, 5th Dist. Licking No. 00CA69, 2001 Ohio App. LEXIS 733 (Feb. 26, 2001) (where the decedent died as the result of the negligence of two underinsured tortfeasors, court construed policy language against the

insurer, finding that policy did not limit the coverage available to a single claim and that policy's $300,000 per accident limits applied to each tortfeasor separately, such that the total amount of UIM coverage available to appellees was $600,000).

{¶35} Even if we were to apply the causation approach to the facts here, we would find that there is more than one alleged cause of Saah's fatal injuries and thus, more than one potential "accident" for liability limits purposes. Here, the alleged causes of Saah's injuries were separate acts of negligent conduct by Meadows and Budzar. The "cause" considered under the causation approach is the *tortious conduct* that allegedly caused the injuries at issue, not, as Peerless contends, the surrounding circumstances that allegedly led to the tortious conduct. If, as Peerless contends, Saah's injuries had been caused by the road conditions rather than by the negligence of Meadows and/or Budzar, UIM coverage would not be an issue because UIM coverage under the policy is limited to "compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of [an underinsured vehicle]."

{¶36} Accordingly, the trial court properly determined that the policy provided up to $200,000 in UIM coverage ($300,000 less the $100,000 setoff) for each of the two "accidents" alleged to have caused Saah'a fatal injuries in this case (for a total of up to $400,000 in UIM coverage). Peerless's first and second assignments of error are overruled.

**Trial Court's Determination that Peerless Was Required to Tender and That Sarrough Was Entitled to $400,000 in UIM Benefits**

**{¶37}** In its third and fourth assignments of error, Peerless argues that the trial court erred in entering full summary judgment on Sarrough's breach of contract claim and determining as a matter of law that Sarrough was entitled to total underinsured motorist benefits from Peerless in the amount of $400,000 because Sarrough (1) moved only for partial summary judgment and (2) presented no evidence of damages caused by either "accident." Peerless argues that "the comparative negligence of [Saah] and the alleged tortfeasors," whether each accident was the proximate cause of Sarrough's damages, and the amount of damages, if any, caused by each accident were issues of fact for the jury to decide.

**{¶38}** Sarrough concedes that she "had not requested an adjudication of damages" and that Peerless "is fully entitled to explain to a jury how [d]ecedent was really at fault for her own death and [that] her family's wrongful death/survivorship damages are not worth the policy limits." She contends that Peerless's arguments are based on a misreading of the trial court's December 3, 2014 opinion and order, i.e., that the December 3, 2014 opinion and order did not grant her full summary judgment but simply declared the amount of the policy *limits* that were potentially available on her breach of contract claim. She asserts that "[e]veryone understood that damages had yet to be determined" and that the December 3, 2014 judgment entry was not a final order because "the amount of the judgment to be imposed" had not yet been decided. We disagree.

**{¶39}** The trial court, in its December 3, 2014 opinion and order, did not simply declare that there were two accidents and that a separate $300,000 limit of liability (less setoff) was potentially available to Sarrough for each accident under the policy. The trial

court went further, finding (1) that "reasonable minds could only conclude that, but for the negligence of both Meadows and Budzar, Hanan Saah would not have suffered fatal injuries" and (2) that "[s]ince plaintiff is legally entitled to recover from both underinsured motorists for each accident they caused, separate 'per accidents' limits *must be tendered* for a total of $600,000" (emphasis added), less the setoffs — issues as to which there are clearly facts in dispute. Based on these findings, the trial court concluded that Sarrough was "[t]herefore, * * * entitled to total underinsured limits from Peerless in the amount of $400,000.00." Nothing in the trial court's order made Peerless's liability for this amount contingent upon any further findings or determinations. The trial court journalized its order as a "final" judgment entry, and all other claims in the case had been previously dismissed. As such, the December 3, 2014 judgment entry was a final, appealable order. R.C. 2505.02(B); *see also State ex rel. White v. Cuyahoga Metro. Hous. Auth.*, 79 Ohio St.3d 543, 546, 684 N.E.2d 72 (1997) (observing that the general rule is that orders deciding liability but "deferring" the issue of damages are not final appealable orders under R.C. 2505.02 "because they do not determine the action or prevent a judgment" but that an exception to this rule exists such that even "a judgment not completely determining damages is a final appealable order where the computation of damages is mechanical and unlikely to produce a second appeal because only a ministerial task similar to assessing costs remains").

{¶40} Sarrough concedes that, based on the evidence submitted by the parties in support of their motions for summary judgment, genuine issues of material fact remain regarding negligence, causation and damages. Although the trial court properly held,

based on the interpretation of the policy, that as to each "accident," Peerless bears underinsured motorist liability of up to $200,000 (its $300,000 per accident policy limits less the $100,000 already received from Meadows and Budzar's insurers), the trial court went too far, based on the summary judgment record here, in conclusively deciding issues of negligence, causation and damages on summary judgment. We sustain Peerless's third and fourth assignments of error.

**Motion to Strike**

{¶41} In its fifth and final assignment of error, Peerless argues that the trial court erred in failing to strike the traffic crash report and "its hearsay contents" attached to Sarrough's motion for partial summary judgment. Peerless further contends that we should "presume" that the trial court relied on these improper evidentiary materials in ruling on the parties' summary judgment motions.

{¶42} The trial court did not rule on Peerless's motion to strike before granting Sarrough's motion for summary judgment. As such, it is presumed to be denied. *See, e.g., Mayfair Village Condo. Owners Assn. v. Grynko,* 8th Dist. Cuyahoga No. 99264, 2013-Ohio-2100, ¶ 4, fn. 2 ("Although the trial court never ruled on the motion, if a motion is not expressly decided by the trial court when the case has concluded, the motion is presumed to have been denied."), citing *Kostelnik v. Helper,* 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58. Even assuming that all or part of the traffic crash report constituted inadmissible hearsay, there is nothing in the record that suggests that the trial court considered the traffic crash report or any information contained in the traffic crash report in deciding the parties' cross-motions for summary judgment. The

parties agree that the material facts upon which the trial court's summary judgment ruling was based are undisputed. Those facts were established independently of the traffic crash report based on the deposition testimony of the witnesses. Peerless has not claimed, much less demonstrated, any prejudice resulting from the trial court's denial of its motion to strike. Accordingly, any such error was harmless and did not affect the substantial rights of the parties. Civ.R. 61. Peerless's fifth assignment of error is overruled.

**{¶43}** Judgment affirmed in part and reversed in part. Case remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
SEAN C. GALLAGHER, J., CONCUR